UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                    Criminal No. 10-345 (PJS/FLN)

                    Plaintiff,

        v.                                                   **REPORT AND**
                                                             **RECOMMENDATION**

**Marlon Louis Danner**,

                    Defendant.

_____

Nancy E. Brasel, Assistant United States Attorney, for Plaintiff.
James E. Blaney for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on May 12,

2011 on Defendant's Motion to Dismiss Count 11 (ECF No. 22). The matter was referred to the

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For

the reasons set forth below, the Court recommends that Defendant's motion be **GRANTED** and

Count 11 of the Indictment be **DISMISSED**.

## I.   BACKGROUND

The indictment in this matter alleges, in relevant part, the following:

Marlon Danner ("Defendant" or "Danner") operated Danner, Inc. and Bull Dog Leasing, Inc.

(together, "Danner trucking companies"), companies "that supply trucks and drivers to various road

construction projects in Minnesota." (ECF No. 1, Indictment ¶ 1.) One such project was a 2008 to

2009 highway construction project on Highway 120/Century Avenue in Ramsey and Washington

Counties (the "Century Avenue project"). (Indictment ¶ 3.) In January and February 2010,

investigators with the Minnesota Department of Transportation ("MnDOT") determined that "Danner, doing business as the Danner trucking companies, had underpaid its drivers on the project." (Indictment ¶ 5.) MnDOT reached a settlement with Defendant regarding the underpayment in February 2010. (Indictment ¶ 6.)  Under the terms of the settlement, Defendant, on behalf of the Danner trucking companies, "agreed to pay over $185,000 collectively to approximately 27 truck drivers for work they performed on the Century Avenue project but had been previously underpaid ("MnDot/Danner settlement"). (Indictment ¶ 6.)

On or about February 27, 2010, Defendant "began a campaign to obtain return of the MnDOT/Danner settlement funds from the drivers, without informing MnDOT that he was doing so." (Indictment ¶ 10.)  He contacted many of the drivers by telephone and informed them "that when they received their money from MnDOT, they should give the money back, and that they should see the Danner trucking companies' office manager for information on how to write checks to return the money." (Indictment ¶ 11.) Between March and May 2010, many of the drivers did so, and the office manager, pursuant to Defendant's instructions, "directed drivers to write checks to various companies operated by Danner." (Indictment ¶ 15.) Many of those drivers "wrote checks to the Danner entities as directed" by Defendant and his office manager, some of whom  "then received falsified receipts for these amounts . . . to conceal the nature of the repayment." (Indictment ¶¶ 15–16.)  A MnDOT representative delivered the drivers' signed release forms to Defendant on or about May 10, 2010. (Indictment ¶ 17.)  At that time, Defendant "falsely and fraudulently certified that the checks were issued without rebate from the Danner trucking companies." (Indictment ¶ 17.) The indictment goes on to state that, in fact, "as Danner well knew, the checks were issued with rebate, because Danner had been repaid by many of the drivers for a substantial portion of the total settlement funds." (Indictment ¶ 17; *see* ECF No. 24, Blaney Aff. Ex. A (The

2

form reads: "I have received the signed Mn/DOT Check Release forms for the checks listed below. The checks were issued without rebate from my companies, Danner Inc. and Bulldog Leasing Inc., for work performed on State Project # 62-672-04."))

The charges against Defendant include six counts of wire fraud, three counts of mail fraud, and one count of false statement. (Indictment.) Count 11 of the indictment, entitled "False Statement," states, in relevant part:

> On or about May 10, 2010, the defendant, MARLON LOUIS DANNER, did knowingly and willfully make a false material statement and representation in a matter within the jurisdiction of the Federal Highway Administration, an agency of the United States, in that the defendant certified that he received the MnDOT Check Release forms for the checks issued without rebate from the Danner trucking companies. In truth, at the time the defendant certified that he had issued the checks without rebate, the defendant knew that he had received a large amount of the MnDOT/Danner settlement funds back from drivers, at his own request and direction; all in violation of Title 18 United States Code, Section 1001(a)(2).

(Indictment ¶ 24.)

Defendant has now moved to dismiss Count 11 of the Indictment against him.

## II.   LEGAL ANALYSIS

### A.   Applicable Standard

Generally speaking, "when a defendant is charged with answering falsely under oath, the intended meaning of a question and answer are matters for a jury to decide." *United States v. Turner*, 500 F.3d 685, 689 (8th Cir. 2007), citing *United States v. Hirsch*, 360 F.3d 860, 863 (8th Cir. 2004). Still, "[a]n indictment premised on a statement which on its face is not false cannot survive." *United States v. Vesaas*, 586 F.2d 101 (8th Cir. 1978); *see also Bronston v. United States*, 409 U.S. 352, 362 (1973) ("It may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless, . . . any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury

3

prosecution.").

"The existence of some ambiguity in a falsely answered question will not shield the respondent from a perjury or false statement prosecution." *Turner*, 500 F.3d at 689, quoting *United States v. Culliton,* 328 F.3d 1074, 1078 (9th Cir. 2003). "If, however, a question is 'fundamentally vague or ambiguous,' then an answer to that question cannot sustain a perjury conviction." *Turner*, 500 F.3d at 689, citing *Hirsch,* 360 F.3d at 863. A question is "fundamentally ambiguous" if it has neither a meaning about which persons "of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer." *Turner*, 500 F.3d at 689. In order to uphold such a conviction, a reviewing Court must ultimately determine, therefore, whether "the jury could conclude beyond a reasonable doubt that the defendant understood the question as did the government and that so understood, the defendant's answer was false." *Turner*, 500 F.3d at 690, quoting *United States v. McKenna,* 327 F.3d 830, 841 (9th Cir. 2003).

## B.    Count 11 Contains a Fundamental Ambiguity.

The issue before the Court is whether Count 11 of the Indictment is premised on a question that was "fundamentally vague or ambiguous." "Absent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of [a] declarant's answer is for the jury." *United States v. Robbins*, 997 F.2d 390, 395 (8th Cir. 1993). Because the Court finds that the statement at issue is fundamentally ambiguous, and in light of the "impreciseness in the questioning," a determination of "the meaning and truthfulness" of Defendant's certification is not properly a question for the jury at trial. *United States v. Robbins*, 997 F.2d 390, 395 (8th Cir. 1993) ("[A]ny special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury prosecution.")

The Government represented at the hearing that the allegedly false statement that forms the

4

basis for Count 11 (and the statement it intends to introduce at trial to prove Defendant's guilt thereof) is Defendant's signed certification of Exhibit A to the Affidavit of James E. Blaney. The statement on which the Government relies is the following sentence contained in the Check Release Forms Certification, drafted by MnDOT: "The checks were issued without rebate from my companies, Danner Inc. and Bulldog Leasing Inc., for work performed on State Project # 62-672-04." (Blaney Aff., Ex. A.) The Government contends that Defendant knowingly made a false statement by signing the form and certifying to its truth and accuracy under penalty of law. (*See* Blaney Aff., Ex. A.) The Government claims that, in so doing, Defendant represented that he received no rebate from anyone at all—not only that he received no rebate from the Danner companies themselves. In this manner, according to the Government, the phrase "from my companies" modifies the clause "[t]he checks were issued;" that is, the meaning of the sentence as written is the same as if it had been drafted instead to read: "The checks were issued from my companies . . . without rebate."

Defendant argues, however, that the sentence: "The checks were issued without rebate from my companies . . . ." is unambiguous and literally true as written. He contends that, in fact, the Danner companies provided no rebate. Therefore, because neither of the statements contained within the Check Release Forms Certification are false, the Government has failed to properly allege a violation of 18 U.S.C. § 1001(a)(2). Defendant thus maintains that he made no "false, fictitious, or fraudulent statement or representation" sufficient to support a conviction under the statute. *See* 18 U.S.C. § 1001(a)(2).

The Court finds that the statement at issue is facially, and fundamentally, ambiguous. *See United States v. Colin Anderson*, 879 F.3d 369, 376 (8th Cir. 1989). The sentence: "The checks were issued without rebate from my companies . . . ." has neither a meaning about which persons "of

5

ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer" in the context of the MnDOT form at issue. *See Turner*, 500 F.3d at 689.

In light of such an ambiguity, in order to meet its burden to sustain a conviction for the charge, the Government would have to be able to introduce at trial "proof sufficient to establish the falsity of the statements." *United States v. Leslie Anderson*, 579 F.2d 455, 460 (8th Cir. 1978). In carrying out its burden, the Government "must negative any reasonable interpretation that would make the defendant's statement factually correct." *Id.* The Court has determined that Defendant's interpretation of the statement at issue is a reasonable interpretation. Specifically, it is objectively reasonable for Defendant to have interpreted the clause: "The checks were issued without rebate from my companies" to mean only that the Danner trucking companies themselves provided no rebate. This interpretation would render valid Defendant's certification as the statement would thus be literally true as understood. As such, the Government cannot "clarify the facial ambiguities in the certification clause" and is therefore unable to establish that Defendant "willfully submitted" the document "knowing the certification to be false." *Id.* No jury could conclude beyond a reasonable doubt that Defendant "understood the question as did the [G]overnment and that so understood, [Defendant's] answer was false." *See Turner*, 500 F.3d at 690.

For the reasons described herein, the Court finds that Count 11 of the Indictment, and the statement on which it is based, contain a facial and fundamental ambiguity. The meaning and truthfulness of Defendant's statement are thus not properly questions for the jury. As such, Count 11 must be dismissed.

## III.   RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1)      Defendant's Motion to Dismiss Count 11 (ECF No. 22) be **GRANTED**; and

2)      Count 11 of the Indictment be **DISMISSED**.


DATED: May 25, 2011                          _s/ Franklin L. Noel_____
                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 8, 2011**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **June 8, 2011** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.